Submitted on briefs January 29, affirmed September 24, 1958

KYNELL ET AL *v.* ERRION ET UX

329 P. 2d 1113

Glenn R. Jack, James O. Goodwin, Oregon City, and Richard E. Rink, Salem, filed briefs for appellants.

Kern Crandall, C. J. Stocklen, Portland, and Albert Olsen, Seattle, Washington, filed a brief for respondents.

WARNER, J.

This action is brought by the plaintiffs, A. F. Kynell and Kynell Industries, Inc., a corporation, to recover from the defendants, E. R. Errion and Amey Errion, his wife, for moneys obtained by the practice of fraud and deception. From a judgment for $123,407.41 against E. R. Errion, he appeals.

The judgment represents the amount the jury found plaintiffs had advanced to Errion during the first eleven months of 1948. These disbursements were made as partial payment and advance of the "fee" claimed by Errion as one-third of the "savings" to be derived by means of a plan and scheme of Errion which he represented would save the plaintiff Kynell a large sum of money by Errion's reorganization of the several companies owned and operated by Kynell in and near Blaine, Washington.

Kynell and Errion met for the first time in Pendleton, Oregon, in September of 1947. At the time they and their wives were guests in the home of a mutual friend.

Kynell was then the prosperous owner of a lumber mill, doing a gross business of approximately $1,000,000 per year, and with a payroll of 110 persons. He also operated as separate entities, a shingle mill and retail lumber yard, in Blaine, Washington. In addition, he was the owner of a partnership interest in a timber operation in Canada, not far from Blaine. He enjoyed an unusually favorable credit standing with the banks through which he conducted his business, and, as far as the record reveals, was, in 1947, and when he retained the services of Errion, in January, 1948, not only solvent, but without financial problems.

Kynell was civic-minded and desirous to do something in a substantial way for the further development of the community from whence he had derived his own prosperity, and, therefore, anxious to expand his capital so as to better achieve the various enterprises he had in mind.

These things became known to Errion during their contact in Pendleton. It was then that he first represented himself in a very persuasive fashion to Kynell

as a tax expert and industrial specialist of wide and successful experience and with an extensive acquaintance with men and officials of influence and prominence. He assured Kynell that with his genius and background he could by a revaluation of Kynell's assets and a reorganization of his operations effect a total savings to him of approximately $675,000.

The confidence which Errion inspired in Kynell led to his employment in January, 1948. Errion, however, made it a condition that he was not to be hampered by accountants or attorneys other than those of his own hiring. So great was Kynell's trust in Errion, as a man and one particularly qualified to attain his objectives, that he gave Errion carte blanche authority to proceed. Kynell frequently stated he trusted Errion like "a brother," a circumstance further fortified by their membership in the same religious organization.

Errion's first step was to create the corporation, Kynell Industries, Inc., one of the plaintiffs herein, to which on his direction were transferred all of Kynell's operating assets, but at highly inflated values established by appraisers hired and brought in by Errion. He, thereafter, gave directions as to the conduct of the business, surrounding Kynell with accountants and other key employees of his own choosing, including Kynell's personal secretary.

We shall not delineate all the steps which followed leading to Errion's enrichment and Kynell's financial involvement and collapse. It is sufficient to say that Errion did not prove to be the Midas he promised as to Kynell's holdings; to the contrary, Errion's touch was a kiss of death as to the prosperity of his client's several enterprises. As a result of the Errion pretense at "reorganization," Kynell, in less than 18 months from January, 1948, found himself insolvent, with no

credit and working for wages. Errion, however, during the corresponding period, had improved himself financially to the extent of the instant judgment.

Errion presents five assignments of error for our consideration. Two are directed to the court's failure to allow defendant's motions for nonsuit and a directed verdict. These have dictated a careful examination of a voluminous record consisting of a transcript of testimony of 579 pages and 63 exhibits. We find these assignments are absolutely wanting in merit. There was ample evidence revealing that Errion, by reason of his devious machinations, was guilty of gross fraud, and to his profit in the amount represented by the jury verdict.

Predicated upon the record of Errion's crafty operations in this matter, we know of no better estimate of Errion's character as revealed herein, than the one which we made in *Duniway v. Barton and Errion*, 193 Or 69, 237 P2d 930, where, at page 84, he was described as one "not only unscrupulous, bold and designing, but also clever and plausible." Also see *McKenney v. Buol and Errion*, 214 Or 244, 329 P2d 664, decided September 10, 1958.

We also find the other three specifications of error to be wanting in merit and decline to spread them on the record.

Affirmed.

SLOAN and O'CONNELL, JJ., not participating.